# <u>EXHIBIT B</u>

## Declaration of Bishop Jennifer Nagel

1.      I completed my ministry training in 2000 and have served in a variety of communities in the Evangelical Lutheran Church in America (ELCA). I am ordained as a pastor. In 2024, I was elected by the Minneapolis Area Synod of the ELCA to serve in the role of Bishop of this synod. I make this declaration based on my personal knowledge.

2.      Throughout my ministry, I have served in urban congregations. Although none of these congregations were comprised primarily of recent immigrants, each included members who were recent immigrants, particularly from Latin American contexts and African countries. Each congregation maintained a focus on ministry with vulnerable populations. The congregation I served immediately prior to my election as Bishop had a ministry related to accompaniment of immigrants and advocacy for immigration related issues.

3.      As Bishop, I oversee 137 worshipping communities and nearly 700 pastors and deacons, some who are serving actively and some who are retired. The Minneapolis Area Synod includes 142,400 baptized members and is the largest synod in the Evangelical Lutheran Church in America by membership. The synod includes the city of Minneapolis and the surrounding suburbs and towns stretching about an hour to the north, west, and south of the city. Providing pastoral care to persons who are marginalized, detained, or otherwise isolated is not discretionary; it is central to my ordination vows, ecclesial office, and binding religious commitments.

4.      My ministry has regularly included in-person pastoral care in institutional settings, including hospitals, nursing homes, treatment centers, prisons, and jails. I am experienced in complying with institutional protocols while providing confidential and appropriate religious care. I have also participated in prayer vigils outside the Federal Whipple Building in Minnesota in solidarity with detained immigrants.

5.      The Evangelical Lutheran Church in America formally and unequivocally affirms its responsibility to provide pastoral and legal counsel to persons without legal status and to advocate for detained individuals who are frequently isolated from spiritual care and vulnerable to neglect or abuse. The Church calls its ministers to provide pastoral care, to stand publicly with the poor and oppressed, and to care for those who are imprisoned and marginalized.

6.      Under the governing documents of the Evangelical Lutheran Church in America, every minister of Word and Sacrament is required to provide pastoral care and to work for justice and peace. Congregations are likewise required to respond to human need and care for the suffering. These are mandatory religious obligations that define the exercise of ministry within my denomination.

7.      In Scripture, we are told that in visiting the imprisoned, we are in fact encountering Jesus in the face of our neighbor (Matthew 25:36-40). The Church specifically calls its members to remember those affected by incarceration, to pray for them publicly, and to proclaim release to the captive as a sign of God's reign. The ordination vows I made—vows that all Evangelical Lutheran Church in America pastors make—calls us to "pray for God's people [and] nourish them with word and sacraments." Seeking out those who are isolated, afraid, detained, or suffering is a core expression of Christian discipleship and a non-negotiable component of my vocation.

8.      On Ash Wednesday, February 18, 2026, I went to the Federal Whipple Building to provide in-person pastoral care to immigrant detainees, including prayer, spiritual counseling, and the imposition of ashes. The imposition of ashes marks the beginning of Lent and is a sacred rite symbolizing repentance, mortality, and hope. For Christians, particularly those experiencing confinement, fear, and uncertainty, the opportunity to receive ashes is profoundly meaningful and time-specific. Ash Wednesday occurs once each year and cannot be recreated at another time.

9.      I identified myself as clergy and requested entry for the specific purpose of providing religious care to any detainees who desired it. I entered a waiting room and again identified myself as clergy, explaining that I sought to provide prayer, spiritual counseling, and the imposition of ashes. I was denied access to detainees. I was told that the Federal Whipple Building is a processing facility and that no one is allowed access to provide pastoral care, purportedly for safety reasons. I was provided no individualized assessment and offered no reasonable alternative means to fulfill my pastoral obligations.

10.      I was further informed that detainees were held at the Federal Whipple Building for only short term processing. In my personal experience, however, individuals from our congregations and community have been held there for days. Even brief detention does not diminish the urgent need for spiritual care, particularly when detainees may be transferred without notice.

11.      I have complied with security and identification procedures in numerous institutional settings throughout my ministry and remain ready and willing to comply with any reasonable, neutral, and generally applicable security requirements at the Federal Whipple Building. My sole purpose in seeking access is to fulfill my religious duties. I do not seek to interfere with operations, but to minister to those who desire pastoral care.

12.      Providing in-person pastoral care is an essential religious exercise. My faith requires physical presence, personal engagement, confidentiality, and direct administration of sacramental ministry. These elements cannot be adequately replicated through indirect, remote, or delayed means. When access is denied during

2

detention, especially where transfers occur without notice, the opportunity for ministry is often permanently lost.

13.    The government's refusal to permit clergy access to detainees at the Federal Whipple Building substantially burdens my sincere religious exercise and prevents me from carrying out mandatory pastoral obligations central to my faith and office. The denial categorically excludes clergy from ministering to detained persons at the very moment when they are most vulnerable and in need of spiritual care.

14.    I intend to continue seeking access to provide visitation, prayer, spiritual counseling, and sacramental ministry to detained immigrants at the Federal Whipple Building, consistent with my religious obligations and subject to legitimate and neutral security protocols.

15.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 20ᵗʰ day of February 2026.


Bishop Jennifer Nagel

3