# **<u>EXHIBIT E</u>**

## <u>Declaration of Rev. Susan Hayward</u>

1. I am the Minister of Justice and Formation at Creekside United Church of Christ (UCC) in South Minneapolis, Minnesota. I make this declaration based on my personal knowledge.

2. I was ordained in 2009 to a ministry focused on religious peacebuilding and pastoral care. For fourteen years, I worked for the United States Institute of Peace, living and working around the world in regions affected by violent conflict and authoritarian rule. My work included supporting individuals and communities experiencing instability, trauma, and displacement.

3. My education, training, and lived experience center on caring for individuals affected by violence and trauma. I have learned that tending to spiritual and emotional well-being is essential to healing and to breaking cycles of harm. My Christian faith obligates me to provide pastoral care to those experiencing fear, isolation, and trauma.

4. Throughout my ministry, I have served in chaplaincy roles in hospitals and correctional settings, providing spiritual support to individuals in institutional custody.

5. I have also worked closely with immigrant communities in Minnesota, including assisting with immigration-related matters through The Advocates for Human Rights.

6. Since February 2024, I have served as Minister of Justice and Formation at Creekside UCC. The congregation is committed to welcoming and supporting immigrants and to accompanying vulnerable members of the community.

7. In my current role, I oversee and participate in ministries focused on justice, accompaniment, and pastoral care for marginalized communities throughout Minneapolis and the State of Minnesota.

8. On January 13, 2026, I participated in a monthly prayer vigil organized by the Interfaith Coalition on Immigration outside the Whipple Federal Building in Minneapolis.

9. After the vigil concluded, two clergy colleagues and I entered Whipple Federal Building to offer pastoral care to individuals detained there. I sought access after learning from community members that detainees were being held in harsh conditions, sometimes for longer than 72 hours. Based on my experience working with trauma survivors, detention under such circumstances can significantly impact spiritual and emotional health.

10. We passed through building security and approached an office marked Immigration and Customs Enforcement (ICE). A person wearing a General Services

Administration lanyard asked how he could assist us. We explained that we were clergy seeking to provide pastoral care to detainees.

11.     We were later informed by the man that we would not be permitted to visit detainees that day. We were given a telephone number to request visitation. We then offered a prayer in the vestibule and left without being allowed to meet with any detainees.

12.     After our January 13 attempt, at least one of my clergy colleagues was able to speak to someone at the phone number provided. He was informed that clergy members would not be permitted to visit detainees at the Whipple Federal Building to provide pastoral care. No explanation for this denial was given.

13.     On Ash Wednesday, February 18, 2026, another clergy colleague and I again attempted to gain access to provide pastoral care, including the imposition of ashes, to detained immigrants. Ash Wednesday marks the beginning of Lent in the Christian tradition and is one of the most significant days of the liturgical year. The imposition of ashes is a central religious rite symbolizing repentance, human mortality, and spiritual reflection. Offering ashes to those who are suffering or in custody is a longstanding and essential pastoral practice.

14.     After passing through security, we were directed to Room 1601, which I understand to be the ICE office. A woman who identified herself as an employee of the Department of Homeland Security informed us that we would not be permitted to visit detainees.

15.     We explained that we were clergy seeking to provide religious ministry and, specifically, to offer the Ash Wednesday rite. The employee informed us that her supervisor had told other clergy members who had attempted to visit earlier that day that detainees were not permitted to receive visitors other than attorneys. She provided an email address to request visitation but did not indicate any timeline or procedure that would allow clergy access.

16.     I was, and remain ready, willing, and able to comply with reasonable and neutral security and identification procedures required for entry into the building. On each occasion, I carried a government-issued identification and wore visible clergy attire. Throughout my ministry, I have complied with comparable procedures in hospitals, prisons, and other secure facilities.

17.     Providing in-person pastoral care to individuals in detention is a core component of my religious vocation. My faith calls me to pray with and for those in custody, to offer counsel and comfort, and to be physically present with those who are isolated and vulnerable. Certain rites, including Ash Wednesday, must occur at specific times in the liturgical calendar and cannot be replicated at a later date.

18.     The denial of access to detainees at the Whipple Federal Building prevents me from carrying out essential religious duties and substantially burdens my ability to

2

exercise my faith. When access is denied during the period of detention, I lose the opportunity to provide ministry at the time it is most needed. For detainees held for short periods, the opportunity for in-person pastoral care may be permanently lost.

19.     I intend to continue seeking access to provide pastoral care, prayer, sacramental ministry, and spiritual counseling to individuals detained at the Whipple Federal Building, subject to reasonable security requirements.

20.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this $\underline{10}$ day of February 2026.

Rev. Susan Hayward