IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Minneapolis Area Synod of The Evangelical Lutheran Church in America, *et.al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Kristi Noem, *et al.* <br><br> *Defendants*. | Case No. 26-1576 |

**DECLARATION OF DEPUTY FIELD OFFICE DIRECTOR TAURIA RICH**

I, Tauria Rich, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am employed by the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) as Deputy Field Office Director (DFOD) with the St. Paul Field Office. I have held this position since April 2024.

2. I have been employed by ICE since July 2006, holding several positions: Immigration Enforcement Agent; Deportation Officer, handling all aspects of alien identification, arrest, case management, and removal; Supervisory Detention and Deportation Officer, overseeing the Criminal Alien Program (CAP) and Fugitive Operations Teams (FOT); Assistant Field Office Director, managing FOT, CAP, criminal prosecutions, intelligence, special response team, and sub-offices; DFOD, overseeing all enforcement and removal operations in the St. Paul Area; and serving several times as acting Field Office Director for ERO St. Paul to present.

3. As the DFOD of the ERO St. Paul Field Office, I direct and oversee all ICE enforcement, detention, and removal operations, as well as federal immigration law enforcement, in Iowa, Minnesota, Nebraska, North Dakota, and South Dakota. This includes matters related to the CAP and Fugitive Operations Program (FOP). I also coordinate with state and local law-enforcement agencies regarding immigration detainers and agreements pursuant to Immigration and Nationality Act (INA) § 287(g). During Operation Metro Surge, I maintained oversight of the Bishop Henry Whipple Federal Building (Whipple) and coordinated with the Operation Metro Surge leadership who came to Minnesota from other offices around the country due to the national directive and scope. However, decision-making came from a command center and outside leadership.

4. I am aware of the instant lawsuit, stemming from Plaintiffs' requests for in-person pastoral visits for aliens at Whipple.

5. The statements contained in this declaration are based upon my personal knowledge, reasonable inquiry, and information made available to me in the course of my official duties from information obtained from records, systems, databases, other DHS employees, and/or information portals maintained and relied upon by DHS.

**The purpose of the Whipple Hold Room**

6. ICE is charged with removing aliens who lack lawful status in the United States. Detention is an important and necessary part of immigration enforcement. ICE detains people for no purpose other than to secure their presence both for immigration proceedings and their removal, with a special focus on those who represent a risk to public safety, are a flight risk, or for whom detention is mandatory by law. The ICE custodial facility within Whipple is a holding facility.

7. ICE uses holding facilities, including Whipple, for processing of individuals awaiting removal, transfer, immigration court hearing, medical treatment, intra-facility movement, or other processing into or out of a facility. Confinement in holding facilities is intended to be brief and holding facilities such as Whipple are not designed for overnight stays.

8. Whipple is not a detention center, so it is not subject to the National Detentions Standards (NDS). Therefore, it is not generally equipped to hold detainees for more than 12 hours. When aliens are taken into Whipple, they are assessed based on factors such as gender, medical needs, and criminal history, prior to processing. There are rooms for those awaiting processing, transfer, or removal. When an officer is ready to process an alien, the alien is taken to a processing station. ICE officers routinely processed aliens at Whipple within three hours or less because the goal is to transfer aliens to a detention facility as expeditiously as possible.

9. Whipple is in compliance with ICE Directive No. 11087.2, Operations of ERO Holding Facilities (issued Jan. 31, 2024). A true and correct copy of that directive is attached as Exhibit 1.

10. In contrast to Holding Facilities, Detention Centers exist to provide detainees with their Constitutional Due Process minimums, which include, among other provisions, access to counsel, medical care, and necessities, such as nutritional meals, beds, numerous showers, and clothing. Further, Detention Facilities are governed by National Detention Standards (NDS). The NDS establishes consistent conditions of confinement, to include visits by clergy and religious leaders. A true and correct copy of the NDS is attached as Exhibit 2.

11. The majority of aliens in custody at Whipple are transported to other ICE facilities within 24 hours, absent exceptional circumstances.

**The End of Operation Metro Surge**

12. I understand that before Operation Metro Surge (and except when COVID protocols were in place), clergy members would have been allowed to make visits to detainees at the Whipple building on a case-by-case basis had any clergy members asked to enter. During my time working at the St. Paul Field Office, I do not recall a detainee asking to visit with clergy or another faith leader while at Whipple. All visitors, including clergy members, were consistently prohibited from engaging in physical contact with the detainees at Whipple.

13. During Operation Metro Surge, daily operational decisions were made by the leadership brought in nationwide. At times, agitators threw rocks and bricks at government vehicles. There were two instances where rioters came toward the Whipple building armed with shields and batons and attempted to enter the building. At times, non-law enforcement employees were sent home for safety reasons. Because there are sometimes assumptions that all persons entering Whipple are ICE employees, this also caused danger for non-ICE visitors, who sometimes had to walk through protesters to get into the building. Because Whipple is a temporary holding facility meant for processing detainees expeditiously in-and-out of the holding facility, visitors and visitation is rare and limited.

14. Operation Metro Surge officially ended on February 12, 2026, and draw down measures began. With respect to outside clergy access, as of at least March 5, 2025, practices and procedures at the Whipple building have reverted to those that were in effect pre-Operation Metro Surge, with visit requests being handled on a case-by-case basis. Due to the end of Operation Metro surge, there are now fewer detainees processed through the Whipple Building on a daily basis.

15. As of at least March 5, 2026, members of the clergy are able to visit detainees at Whipple.

16. From March 2, 2026 to March 9, 2026, only one clergy member attempted to visit detainees at the Whipple building. On March 6, 2026, I was informed that a clergy member entered the visitation area of the Whipple building and made a request to visit detainees. The clergy was informed by a Deportation Officer ("DO") at the Whipple building that no detainees were present at the Whipple building at that time. The DO informed the clergy member that the clergy member could wait for detainees to arrive at a later time or that the clergy member could leave the Whipple building. The clergy member voluntarily left the Whipple building without signing the visitor log. If there had been detainees at Whipple, the clergy member would have been able to visit any detainees who expressed a desire to meet with clergy.

**Physical Contact with Detainees**

17. ICE must ensure safety for all detainees, officers, staff, and visitors at holding facilities. Holding facilities are staffed with enough officers and staff to process transitory aliens in and out of the facility, but there are not additional officers and staff to support in-person contact visits, as allowed in long-term detention facilities.

18. For safety purposes, faith leaders cannot engage in physical contact with the detainees at Whipple, nor can they be placed with groups of detainees to announce their presence. Detainees may have convictions for violent crimes or their criminal histories are unknown at the time they enter the facility. Whipple recently processed an alien convicted of murder, for example. I witnessed an alien attempting to kick the walls out of a hold room and the windows of a transport van, requiring six officers to restrain him. Staff has been kicked, bitten, spit on, and punched. Some persons come to Whipple with undiagnosed or unknown mental illnesses that also make behaviors unpredictable. Whipple cannot predict all

potential dangerous behaviors when clergy are present, including when clergy wish to provide unknown religious items.

19. Because Whipple is a temporary holding facility, not equipped to allow for physical contact with detainees, allowing physical contact would require additional officers to be present to ensure the safety of the aliens, visitors, and DHS personnel.  There are four small rooms in the holding area at Whipple, each allowing a visitor to meet with one detainee with glass between them, providing adequate staff is present.  These small rooms have not been utilized for many years and would require significant security upgrades to use on a regular basis. Facilitating large group meetings or physical contact would require substantial reconfiguration of the space as well as substantially increased staffing, and is simply not feasible in this temporary holding facility.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 16th day of March 2026.

**TAURIA L RICH**  Digitally signed by TAURIA L RICH
Date: 2026.03.16 16:28:46 -05'00'

_____
Tauria Rich
Deputy Field Office Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security