# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNEAPOLIS AREA SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA, MINNESOTA CONFERENCE OF THE UNITED CHURCH OF CHRIST, and FATHER CHRISTOPHER COLLINS, SJ,<br><br>      Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; MARCOS CHARLES, in his official capacity as the Acting Executive Director for Immigration and Customs Enforcement's Enforcement and Removal Operations; DAVID EASTERWOOD, in his official capacity as Acting Field Office Director for Immigration and Customs Enforcement's Enforcement and Removal Operations St. Paul Field Office; U.S. FEDERAL PROTECTIVE SERVICE; and FARON K. PARAMORE, in his official capacity as Director of the Federal Protective Service,<br><br>      Defendants. | Case No. 26-cv-1576 (JWB/DTS)<br><br><br>**PLAINTIFFS' AND DEFENDANTS' PROPOSED PROTOCOL ON ACCESS TO BISHOP HENRY WHIPPLE FEDERAL BUILDING FOR PASTORAL CARE** |

## **INTRODUCTION**

Pursuant to the Court's Order on Motion for Preliminary Injunction (Dkt. 57), Plaintiffs and Defendants met and conferred on March 25, 2026, to discuss a protocol for access to the Bishop Henry Whipple Federal Building to provide pastoral care. The parties were unable to reach agreement on the protocol. Plaintiffs and Defendants set forth their respective proposals and positions as follows.

## 1.    **Right of Access**

### *Plaintiffs' Proposal:*

> **Right of Access.** Defendants shall permit in-person pastoral visits by faith leaders to all detainees at the Bishop Henry Whipple Federal Building ("Whipple") who wish to receive pastoral care, including spiritual care, prayer, or sacramental ministry of any kind, including rites tied to specific religious observances.

***Plaintiffs' Position:*** Defendants' proposal is inconsistent with the Court's Order and governing law.

First, Plaintiffs' constitutional right to offer pastoral care is independent of detainees' constitutional rights to receive pastoral care. Faith leaders must be able to offer care, and of course, detainees are free to receive or deny such care. Defendants improperly limit access to situations where detainees affirmatively request pastoral care. While Plaintiffs do not seek to provide care to unwilling individuals, requiring detainees to initiate requests ignores not only the constitutional rights of faith leaders to offer such care, but also ignores the coercive nature of detention, the risk or fear of perceived retaliation, and language or informational barriers. Pastoral care must be affirmatively offered to ensure meaningful access.

Second, Defendants continue to rely on undefined "intake" and "processing" phases to deny access without providing any details regarding their duration, scope, or necessity. Despite three meet-and-confers to assist in crafting a meaningful protocol, Defendants have not identified what these processes entail, how long they last, or why pastoral care cannot be accommodated during them. In fact, Defendants have previously suggested that it might be possible for detainees to receive pastoral care as close to five minutes before transfer. RFRA requires more than conclusory assertions—it requires evidence of a compelling interest and that any restrictions to further that interest are the least restrictive means.

2

Third, Defendants' reliance on vague standards such as "clear threats to safety, security, and the orderly operation of the facility" mirrors precisely the arbitrary and opaque language the Court questioned at the Preliminary Injunction hearing. *See* Tr. at 20:14-21:1. Defendants still fail to identify who makes such determinations or what standards govern them.

Finally, Defendants' substitution of "clergy" for "faith leaders" improperly narrows the scope of protected religious exercise. Not all Plaintiffs are ordained clergy, and many religious traditions—including, for example, nuns—do not use ordination as a prerequisite for providing pastoral care. The Court's Order and RFRA protect religious exercise broadly, not only that performed by formally ordained clergy.

For these reasons, Plaintiffs' proposal is consistent with the Court's Order, the First Amendment, and RFRA.

### *Defendants' Proposal:*

Defendants' version of the protocol was prepared in response to Plaintiffs' version but, for the most part, without the benefit of Plaintiffs' explanations below.[1]  Many of the parties' explanations highlight the hypothetical and speculative nature of this case, underscoring the need for record development and evidence of actual visits in the post-Surge environment.  Positions taken during meet-and-confer conferences were for negotiating purposes and should not be taken as evidence.  Defendants do not concede the assertions in Plaintiffs' explanations below, and will dispute many of Plaintiffs' factual and legal contentions as the litigation unfolds.

Defendants opted to use "clergy" in keeping with the Court's own terminology in its initial Order granting a preliminary injunction.  In general, many other wording differences may not be material but reflect the parties' differing perspectives and

---

[1] Plaintiffs provided their explanations after close of business on April 2, 2026, the due date for this joint report.

priorities. In some instances Defendants have removed language that merely restates the law or the terms of the Court's initial Order, or that seemed otherwise repetitive. Defendants specifically address more significant differences below.

> **Right of Access.** During the pendency of this federal litigation, upon detainee request, ICE shall permit in-person pastoral visits by clergy to all detainees at the ICE Hold Room located in the Bishop Henry Whipple Federal Building ("Whipple") who wish to receive pastoral care, including spiritual care, prayer, or facility-approved sacramental ministry, which may include rites tied to specific religious observances.
>
> Clergy cannot enter secured areas of Whipple.
>
> Upon detainee request, clergy visits will be made available after a detainee has completed intake and has been processed. Clergy visits are not operationally feasible once a detainee is actively being processed out of Whipple for removal or transfer.
>
> ICE may limit clergy visitation based on clear threats to safety, security, and the orderly operation of the facility.

***Defendants' Position:*** Requiring facility approval of physical items, and prohibiting visitor entry into secured areas, are important for safety and security. Defendants believe it is reasonable to limit clergy visits to times when detainees request them. Allowing visits during intake and initial processing, or during processing out of Whipple for removal or transfer, would unduly interfere with the orderly operations of the facility and impede the agency's statutory mission of immigration enforcement.
.

## 2.    Hours and Availability

*Plaintiffs' Proposal:*

> **Hours and Availability**. Defendants shall allow faith leader visits seven (7) days per week. In-person visitation shall be available for no less than eight (8) hours per day, Monday through Friday, and for at least the same number of hours as attorney visitation on weekends.
>
> Access shall be provided without unreasonable delay upon a faith leader's arrival. Defendants shall also maintain an emergency access protocol that allows: (a) detainees to request urgent pastoral care at any time; and (b) faith leaders to provide such care without undue delay. If the only opportunity to receive emergency

pastoral care is through a telephone call, such call must be made available free of charge.

Any delay in access must be narrowly tailored, time-limited, and consistent with Defendants' obligations under the First Amendment and the Religious Freedom Restoration Act ("RFRA").

***Plaintiffs' Position:*** Defendants' exclusion of weekend and after-hours in-person care is not the least restrictive means. As an initial matter, Defendants' current position backtracks from their prior representation in the parties' Joint Status Report. *See* Dkt. 40 at 12. As Defendants have acknowledged during meet-and-confers, weekend access is particularly significant given Sabbath observance and other time-sensitive religious practices. Limiting such care to telephone access substantially burdens Plaintiffs' religious exercise in violation of the First Amendment and RFRA.

Defendants' resource-based justification fails as a matter of law. RFRA does not permit the government to deny religious exercise based on administrative convenience or cost where less restrictive alternatives exist. Here, Defendants already staff the facility on weekends pursuant to court order. *See The Advocates for Human Rights, et al. v. U.S. Dep't of Homeland Security, et al.,* No. 26-cv-00749-NEB-DLM, Dkt. 179, at *68 (D. Minn. Mar. 26, 2026) (requiring Defendants to allow attorney visits at Whipple for at least four hours a day on weekends). During the parties' March 25, 2026 meet-and-confer, Defendants confirmed that weekend security staffing levels are not dependent on building usage. In other words, Defendants will continue to staff at least three security personnel in Whipple while they are ordered to do so by the court, and they do not require more or less security staff even if the number of attorneys and faith leaders who visit on any weekend day may vary. This fact undermines any claim that permitting faith leaders—like attorneys—to access the facility would impose additional operational burdens. Defendants offer no explanation for permitting counsel access but denying comparable access to faith leaders.

Finally, Defendants' requirement that detainees affirmatively request pastoral care imposes an additional and unjustified burden on religious exercise. In a custodial setting, detainees may be unaware of their rights or reluctant to make such requests. Plaintiffs' proposal appropriately ensures that the availability of pastoral care is affirmatively communicated through announcements and posted notice, thereby enabling meaningful access consistent with RFRA and the First Amendment.

***Defendant's Proposal:***

**Hours and Availability.** ICE shall allow clergy visits during normal business hours, Monday through Friday, from 8:00 a.m. to 4:30 p.m.

Upon detainee request, and after appropriate security screening and identification verification, same day clergy access shall be provided without unreasonable delay.

ICE shall also maintain an emergency access protocol that allows clergy to provide urgent pastoral care to a particular detainee requesting such care at any time. During weekends, holidays, or outside of normal business hours, where in-person clergy access is not available, detainees will have access to a telephone for urgent pastoral care by phone.

***Defendants' Position:*** Allowing in-person visits outside normal building hours would require Defendants to expend substantial additional taxpayer dollars and resources. Defendants believe telephonic visits during other times should provide a meaningful alternative opportunity.

### 3.    Limitations on Restrictions

***Plaintiffs' Proposal:***

**Limitations on Restrictions.** Defendants may not restrict faith leaders' right to provide pastoral care except where strictly necessary to further a compelling governmental interest and only through the least restrictive means. Any restriction must be specific, time-limited, and based on articulable facts.

Permissible temporary limitations are limited to the following:

(a) When a detainee is actively engaged in fingerprinting, a medical examination, or a similar, discrete, time-limited processing procedure requiring uninterrupted physical presence;

(b) Within five (5) minutes of a detainee's documented and imminent transfer, as reflected in a transport log. This exception may not be invoked absent an actual transfer and may not be used repeatedly to deny access;

(c) When a specific, articulable, and imminent risk to safety or security exists that cannot be mitigated through reasonable alternatives. Any such restriction must be:

(i) authorized by the highest-ranking official present at Whipple at the time;

(ii) narrowly tailored and last no longer than necessary;

(iii) supported by a written statement of the reason why no less restrictive alternative was available; and

6

(iv) documented contemporaneously, including the identity of the decisionmaker, the factual basis, and the duration.

Defendants shall provide Plaintiffs' counsel with a log of all restrictions on a weekly basis.

***Plaintiffs' Position:*** Plaintiffs' proposal ensures that any restriction on religious exercise complies with RFRA's strict scrutiny standard and is not imposed arbitrarily.

Defendants' proposed twenty-minute transfer restriction is overbroad and risks swallowing the rule, allowing Defendants to deny access based on speculative or pretextual transfer timelines. By contrast, Plaintiffs' narrowly tailored five-minute limitation ensures that genuine operational needs are respected while preventing abuse.

Similarly, requiring authorization by the highest-ranking official present is a minimal accountability measure that ensures consistent application and prevents ad hoc decision-making by line officers without clear standards.

Defendants' proposal, by contrast, permits broad, unbridled discretion with limited documentation and no meaningful oversight, increasing the risk of arbitrary or discriminatory denials.

***Defendants' Proposal:***

**Limitations on Restrictions.**

Permissible temporary limitations to clergy access include, but are not limited to, the following:

(a) When a detainee is actively engaged in fingerprinting, a medical examination, or a similar, discrete, time-limited processing procedure requiring uninterrupted physical presence;

(b) Within twenty (20) minutes of a detainee's documented and imminent transfer, as reflected in a transport log. This exception may not be invoked absent an actual transfer and may not be used to intentionally deny access;

(c) When a risk to safety or security exists that cannot be mitigated through reasonable alternatives. Any such restriction must be:

(i) narrowly tailored and last no longer than necessary;

(ii) documented that the detainee requested clergy access and the reason for the temporary denial of clergy access; and

(iii) excluding law enforcement sensitive incidents, documented upon the completion of the limiting incident, the factual basis, the duration, and who made the decision to limit access.

***Defendants' Position:*** Allowing only five minutes before transfer would be impractical, impede orderly operations, and create undue stress for all involved, including detainees. Twenty minutes is more reasonable. Requiring the "highest-ranking official present at Whipple" to specifically authorize each limitation on access is unnecessary and infeasible, especially given the existence of a court-ordered access protocol.

**4.** **Notice to Detainees.**

***Plaintiffs' Proposal:***

**Notice to Detainees.** Defendants shall provide notice of the Court-approved policy to all individuals detained, even temporarily, at the Whipple upon arrival, in their primary language, and shall post such notice in all holding areas. At a minimum, notice shall be provided in English, Spanish, Hmong, and Somali. The notice shall state:

"You have the right to receive pastoral care, spiritual care, ministry, and prayer from a faith leader if you would like to receive it. Please let us know if you would like to receive pastoral care. If a faith leader is present, they can meet with you privately to provide pastoral care. The faith leader can provide pastoral care to anyone of any religious or faith background – you don't need to have the same religion as the faith leader. If you choose to meet with the faith leader, the government will not treat you differently or worse here at the Whipple, or at any other holding or detention facility, and your meeting with the faith leader will have no impact on any current or future immigration proceeding. You have the right to freely exercise your religion, and it is illegal for the government to retaliate against you for doing so."

***Plaintiffs' Position:*** Affirmative, clear, and multilingual notice is essential to ensure meaningful access to religious exercise in a custodial setting. Without such notice, detainees may remain unaware of their rights or fear adverse consequences for exercising them. In addition, including language that explicitly prohibits retaliation is critical given the inherent power imbalance in detention settings and imposes no burden on Defendants.

Plaintiffs' proposal also appropriately refers to "faith leaders" rather than "clergy," for the reasons described above.

*Defendants' Proposal:*

> **Notice to Detainees.** ICE shall post the Court-approved access protocol notice in all holding areas at Whipple. Notice shall be provided in English, Spanish, Hmong, and Somali. The notice shall state:
>
> > "You have the right to receive pastoral care, spiritual care, ministry, and prayer from clergy. Please notify an ICE officer if you would like to receive such care. If clergy is present, they can meet with you privately to provide such care. The clergy can provide care to anyone of any religious or faith background. You do not need to have the same religious beliefs as the clergy. If you choose to meet with clergy, ICE will not treat you any differently, and your meeting with the clergy will have no effect on any immigration proceedings. You have the right to freely exercise your religion."

*Defendants' Position:* Defendants' more streamlined version is adequate to fully address the important rights and needs at issue. Requiring that all detainees be provided notice "in their primary language" is not feasible, as it would require the use of interpreter services for individual detainees. This would be costly, time consuming, and not possible for languages where certified translators are unavailable.

5.    **Notice of Presence and Opportunity to Accept Pastoral Care**

*Plaintiffs' Proposal:*

> **Notice of Faith Leaders' Presence and Opportunity to Accept Pastoral Care.** Upon arrival, faith leaders shall be permitted to announce their presence to detainees and inform them of the availability of in-person pastoral care. If direct announcement is not feasible, Defendants shall promptly provide notice, no more than fifteen (15) minutes after the faith leaders' arrival, to detainees then present at the Whipple, using the following script, read allowed in English and in Spanish and distributed in writing in English, Spanish, Hmong, and Somali (at a minimum):
>
> > "You have the right to receive pastoral care, spiritual care, ministry, and prayer from a faith leader if you would like to receive it. Right now, there is a faith leader here who can offer you pastoral care if you wish to receive it. The faith leader does not work for and is not affiliated with the government. The faith leader's name is [TITLE NAME] of [AFFILIATION]. They can meet with you to provide pastoral care. The faith leader can provide pastoral care to anyone of any religious or faith background – you don't need to have the same religion as the faith leader. If you choose to meet with the faith leader, the government will not treat you differently or worse here at the

Whipple, or at any other holding or detention facility, and your meeting with the faith leader will have no impact on any current or future immigration proceeding. You have the right to freely exercise your religion, and it is illegal for the government to retaliate against you for doing so."

Defendants shall not discourage or interfere with detainees' decisions regarding whether to accept pastoral care. If a detainee arrives after the announcement of the faith leader has already been made, and the faith leader is still present at the Whipple, the newly arrived detainee must be given the above notice within fifteen (15) minutes of the detainee's arrival.

***Plaintiffs' Position:*** Objective timing requirements and standardized notice are necessary to ensure that access is real, not illusory. Without clear timelines, Defendants retain the ability to delay or effectively deny access through inaction.

Verbal notice is particularly important in a custodial environment where written postings may be ineffective due to language barriers, literacy limitations, or detainee movement. The attorney access policy ordered by a court in this district likewise requires Defendants to provide information to detainees in multiple languages. *See The Advocates for Human Rights, et al. v. U.S. Dep't of Homeland Security, et al.*, 26-cv-00749-NEB-DLM, Dkt. 179, at *66 (D. Minn. Mar. 26, 2026).

Written notice alone is insufficient to ensure meaningful access. Defendants' proposal delays notice until after intake, which they have refused to define, and therefore risks denying access entirely. The use of a neutral script ensures consistency, accuracy, and protection against coercion or misinformation. Defendants offer no explanation as to why a script would be burdensome.

***Defendants' Proposal:***

**Notice of Clergy's Presence and Opportunity to Accept Pastoral Care.** After identification and security screening is complete, clergy shall be permitted to access the Whipple hold room. ICE officers shall announce the presence of clergy to detainees and inform them of the availability of in-person pastoral care.

ICE shall not discourage or interfere with detainees' decisions regarding whether to accept pastoral care. If a detainee arrives after the announcement of the clergy has already been made, and the clergy is still present at the Whipple, the newly arrived detainee will be informed of the clergy's presence, after the detainee has been fully processed into Whipple, having all intake procedures completed.

10

*Defendants' Position:* Allowing clergy to personally announce their presence to detainees is unnecessary and infeasible. No script should be required, especially given the written notice already required to be posted in multiple languages.

**6.      Entry and Security Procedures**

*Plaintiffs' Proposal:*

> **Entry and Security Procedures.** Defendants shall allow individuals who identify themselves as faith leaders to enter the facility subject to reasonable, neutral, and uniformly applied security procedures. Such procedures shall be applied in a nondiscriminatory manner; not be more burdensome than those applied to comparable visitors; and not substantially burden religious exercise absent a compelling interest pursued through the least restrictive means.

*Plaintiffs' Position:* Plaintiffs' proposal ensures that security procedures are neutral, consistently applied, and do not impose unnecessary burdens on religious exercise. The exclusion of weekend care in Defendants' proposal is not representative of the least restrictive means. The Honorable Nancy E. Brasel recently required Defendants to allow for attorney access to detainees for at least four hours on weekends and holidays. There is no reason faith leaders should be denied access on weekends when access is available to others.

Defendants' use of the term "credibly identify" is vague and invites arbitrary or inconsistent enforcement. By contrast, Plaintiffs' proposal provides objective constraints that align with RFRA.

Additionally, Defendants again limit access to "clergy," improperly excluding other faith leaders protected by law. In addition, Defendants' proposed policy language is limited to ICE, but multiple federal government entities are involved in the administration of this policy, including Federal Protection Services, whose members staff security for the Whipple.

*Defendants' Proposal:*

> **Entry and Security Procedures.** When the Whipple Building is otherwise open to the public (currently Monday-Friday, 8:00 a.m. to 4:30 p.m.), ICE shall allow individuals who credibly identify themselves as clergy to enter the facility subject to reasonable identification and security screening procedures.

*Defendants' Position:* The language of this section has been streamlined.

11

### 7.   Religious and Sacramental Items

*Plaintiffs' Proposal:*

**Religious and Sacramental Items.** Defendants shall permit faith leaders to bring religious and sacramental items into the facility for use during the faith leaders' visit with detainees that day. Any restriction must satisfy RFRA's compelling interest and least restrictive means standard and must be documented in accordance with Paragraph 3(c).

*Plaintiffs' Position:* Defendants' undefined "facility-approved" standard grants unbounded discretion without any articulated criteria, decisionmaker, or process. RFRA requires Defendants to demonstrate that any restriction is the least restrictive means of furthering a compelling interest. Without defined standards or documentation, neither Plaintiffs nor the Court can assess compliance.

Plaintiffs' proposal provides a workable framework that accommodates legitimate security concerns while ensuring transparency and accountability.

*Defendants' Proposal:*

**Religious and Sacramental Items.** ICE may permit clergy to bring facility-approved religious and sacramental items into the facility for limited use during the clergy's visit with detainees that day. For operational and safety purposes, the religious and sacramental items must remain in possession of the clergy and cannot be given to detainees. ICE maintains discretion to examine any items brought into Whipple and to prohibit items that threaten the safety, security, and orderly operation of the facility.

*Defendants' Position:* Requiring facility approval of physical items is important for safety and security.

### 8.   Non-Retaliation and Non-Interference

*Plaintiffs' Proposal:*

**Non-Retaliation and Non-Interference.** Defendants shall not retaliate against or otherwise penalize any detainee, faith leader, or Plaintiff in any manner, for requesting, providing, or receiving pastoral care; participating in this litigation; or raising concerns about compliance. Defendants shall not interfere with or discourage the exercise of religious rights protected by the First Amendment and RFRA.

***Plaintiffs' Position:*** The prohibition on interference is necessary given Defendants' prior categorical denial of access and ensures that rights protected by the First Amendment and RFRA are not undermined in practice.

While Plaintiffs do not object to ensuring that participation is voluntary, Defendants' additional language is unnecessary and risks being invoked to restrict lawful pastoral engagement.

***Defendants' Proposal:***

**Non-Retaliation and Non-Interference.** ICE shall not retaliate against or otherwise penalize any detainee, clergy, or Plaintiff in any manner, for requesting, providing, or receiving pastoral care; participating in this litigation; or raising concerns about compliance. Clergy or Plaintiff shall not make detainees feel obligated to meet with clergy, to practice or participate in any certain religion, or to interfere with a detainee's freedom to practice or not practice religion.

***Defendants' Position:*** Defendants believe it is important that visiting clergy not make detainees feel pressured to practice or not practice religion, and have added that concept to this section.

## 9.    Implementation

***Plaintiffs' Proposal:***

**Training and Implementation.** Within twelve (12) hours of the Court's Order approving this policy, Defendants shall disseminate the Court-approved policy to all personnel at Whipple and shall provide training sufficient to ensure implementation and compliance.

***Plaintiffs' Position:*** Training is necessary to ensure consistent and lawful implementation of the protocol. Given the constitutional and statutory rights at issue, and Defendants' prior position denying access altogether, mere dissemination of guidance is insufficient to ensure compliance.

***Defendants' Proposal:***

**Guidance and Implementation.** Within twelve (12) hours of the Court's Order approving this access protocol, ICE shall disseminate the Court-approved access protocol to all personnel at Whipple and any necessary guidance to ensure implementation and compliance.

***Defendants' Position:*** Defendants do not believe formal training should be required, but agree guidance is appropriate to ensure the protocol is properly implemented.

10.   **Transfer**

***Plaintiffs' Proposal:***

> **Continuity of Religious Access Upon Transfer.** Defendants shall notify receiving facilities with which they contract, including county jails, that detainees transferred from Whipple must be given access to pastoral care consistent with the First Amendment and RFRA. Defendants shall not transfer detainees for the purpose of interfering with access to pastoral care.

***Plaintiffs' Position:*** Continuity of religious access is essential to meaningful relief. Without notification to receiving facilities, Defendants could effectively nullify this Court's Order through transfer.

Plaintiffs' proposal does not permit abuse or delay of transfers but instead prevents transfers from being used to interfere with protected religious exercise.

Defendants' concern about delay is speculative and does not justify narrowing relief. Ensuring continuity of access is directly tied to the effectiveness of the Court's Order and is well within the scope of equitable relief.

***Defendants' Proposal:***

> **Religious Access and Transfers.** ICE shall not transfer detainees for the purpose of interfering with access to pastoral care. Detainees and clergy shall not attempt to delay transfer by requesting pastoral visitation.

***Defendants' Position:*** Defendants believe it is important that neither detainees nor clergy abuse the opportunity to request pastoral visitation for the purpose of delaying transfer, and have added that concept to this section. The reference to county jails and other facilities has been omitted as beyond the scope of both the court's initial order and the litigation generally.

Dated:  April 2, 2026

Respectfully submitted,

*/s/ Erin Westbrook*
Erin Westbrook (MN #0393072)
Kaitlin Yira (MN #0403458)
**SAUL EWING LLP**
33 South 6th Street, Suite 4750
Minneapolis, MN  55402
612-225-2946
erin.westbrook@saul.com
kaitlin.yira@saul.com

Irina Vaynerman (MN #0396759)
Chelsea Walcker (MN #0396792)
**GROUNDWORK LEGAL**
1650 West End Blvd., Suite 100
St. Louis Park, MN 55416
(612) 208-9349
irina@groundworklegal.org
chelsea@groundworklegal.org

*Attorneys for Plaintiffs*

Dated:  April 2, 2026

DANIEL N. ROSEN
United States Attorney

*/s/ David W. Fuller*
BY: DAVID W. FULLER
Assistant U.S. Attorney
Attorney ID Number 390922
600 U.S. Courthouse
300 South 4th Street
Minneapolis, MN 55415
(612) 664-5600
david.fuller@usdoj.gov

*Attorney for Defendants*

15